IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IBRAHIM ABDULAHI | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | _____ |
| | ) | |
| WAL-MART ASSOCIATES, INC. | ) | JURY TRIAL DEMANDED |
| and WAL-MART STORES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Ibrahim Abdulahi ("Plaintiff" or "Abdulahi") and files this *Complaint,* against Defendants Wal-Mart Associates, Inc., and Wal-Mart Stores, Inc. (collectively referred to as "Wal-Mart"), as follows.

## INTRODUCTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").

2. On July 5, 2012, the United States Equal Employment Opportunity Commission ("EEOC") determined reasonable cause to conclude that Defendant

Wal-Mart, through its agents and employees, had subjected Abdulahi to unwanted ethnic and age-based harassment, and had discriminated against him on the basis of his national origin and age, through a series of events that occurred during 2009. (Attachment 1). EEOC further determined that Wal-Mart retaliated against Abdulahi, after he formally opposed this harassment, by terminating his employment. (Id.). EEOC attempted to resolve the dispute informally through its conciliation process, but those attempts failed. On September 26, 2012, EEOC issued a Notice of Right to Sue. (Attachment 2).

    3.    The evidence shall show that Abdulahi, a fifteen-year employee of Wal-Mart with a history of solid performance and dedication to the company, began to be harassed and mocked due to his Ethiopian national origin and advanced age, by supervising managers at the Wal-Mart location on Cobb Parkway in Marietta, Georgia. At the time, Abdulahi was an Assistant Manager. Abdulahi was determined to resolve the issue internally, by going to upper management about his concerns. Almost immediately after voicing his concerns with Store Manager Demetrius Jackson, Abdulahi received the first unsatisfactory performance evaluation in his long career with Wal-Mart. Abdulahi then filed a formal complaint with Wal-Mart human resources officials. Again, this step was followed almost immediately by threats of termination and written reprimands by Jackson. Finally, Abdulahi filed formal charges of

discrimination and retaliation with EEOC. He was terminated shortly thereafter, allegedly because a gate to the Wal-Mart "Garden Center" was left open on his watch. This rationale was false and a transparent pretext for discrimination.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter, which arises under federal law. 28 U.S.C. § 1331.

5.     Venue is proper in this district and division because Defendant resides herein, and the events giving rise to this matter occurred herein. 28 U.S.C. § 1391 (b)(1).

## PARTIES

6.     Abdulahi is a citizen of the State of Georgia and a resident of Cobb County, Georgia.  He is an American citizen of Ethiopian national origin. Abdulahi was born May 5, 1944, and is a protected individual under the Age Discrimination in Employment Act (ADEA).

7.     Wal-Mart Associates, Inc. and Wal-Mart Stores, Inc. are Arkansas Corporations. They are collectively referred to throughout this Complaint as "Wal-Mart." Wal-Mart is an employer subject to the ADEA, Title VII, and Section 1981. Each Wal-Mart entity may be served with process through their registered agent, Corporation Process Company, which is located at 2180 Satellite Boulevard, Suite 400, Duluth, Georgia 30097.

## FACTS

8.    Abdulahi began his employment with Wal-Mart as a Sales Floor Associate on or about October 1, 1994, at Wal-Mart's retail store on Wade Green Road in Kennesaw, Georgia.

9.    Throughout his fifteen (15) years of employment with Wal-Mart, until the events giving rise to this case, Abdulahi received positive performance reviews. He performed his work to the best of his ability, with no significant history of discipline or unsatisfactory work performance.

10.    In 2001, after working for seven (7) years as a Sales Floor Associate, Abdulahi received a promotion to Assistant Manager. At this time, he was transferred to Wal-Mart's retail store in Cartersville, Georgia.

11.    In or about 2006, Abdulahi was transferred to Wal-Mart's retail store on Cobb Parkway in Marietta, Georgia.

12.    In 2007, Stephen Ray ("Ray"), a Co-Manager at Wal-Mart, who was in a supervisory position relative to Abdulahi, began to harass Abdulahi based on his race and national origin.

13.    For example, Ray frequently mocked Abdulahi's accent and acted as if he could not understand him, despite the fact that Abdulahi speaks clear and fluent English. Ray frequently made statements such as "you're lucky to be in America," in the context of expressive dissatisfaction with Abdulahi's work.

14. Ray routinely belittled Abdulahi in front of other store employees, making such statements as, "c'mon, let me teach you something," or "let me show you," acting as if Plaintiff lacked comprehension due to his ethnicity.

15. Abdulahi voiced his concerns about this behavior by Ray to the Store Manager, Sean Spratt ("Spratt"). Spratt made Ray apologize to Plaintiff.

16. In or around February 2009, Demetrius Jackson ("Jackson") replaced Spratt as Store Manager.

17. In or around February 2009, Ray's harassment towards Plaintiff commenced again.

18. In or around February 2009, another co-manager, Michael Schneider ("Schneider"), began to harass Plaintiff as well.

19. The harassment, in additional to ethnically-based remarks, also included stereotypical and untrue remarks with reference to Abdulahi's advanced age. Ray and Schnieder would often state, for example, that Abdulahi was "forgetful." They spoke to him in a condescending manner that they did not take with the younger employees of the store.

20. On or around March 29, 2009, Plaintiff contacted Store Manager Jackson regarding his concerns of the continual harassment made by Ray and Schneider. Jackson assured Plaintiff the situation would be rectified.

21. However, shortly thereafter, on or around April 9, 2009, Jackson called Abdulahi into his office and advised him not to seek a promotion, transfer or raise, stating that he would not recommend him for any of these.

22. On or around April 14, 2009, Jackson issued the first negative performance review of his fifteen (15) year career with Wal-Mart. Much of Plaintiff's review contained "Development Needed" scores in critical areas. The negative review was unjustified by Adbulahi's actual performance.

23. On or around April 20, 2009, Ray and Schneider attempted to issue Plaintiff a written "coaching" for his work performance in direct retaliation for Plaintiff's efforts to address their harassment against them. Again, the negative comments as to Abdulahi's performance were not justified by his actual performance.

24. On or around April 20, 2009, Abdulahi wrote an "Open Door Letter" to Wal-Mart's Market Human Resource Manager, Shawn Cohen ("Cohen"), addressing the issues of harassment and discrimination. In this and additional communications leading up to the date of his termination, Abdulahi expressed that he believed he was being singled out on the basis of his national origin, ethnicity, and his age.

25. Almost immediately after Abdulahi initiated the "open door" process, Jackson began to threaten Abdulahi and urge him to resign. Jackson

often kept Plaintiff at work after his shift was scheduled to end. Jackson threatened Plaintiff with statements such as, "You cannot do the job, you better step down," "I will give you a D-Day if you do not step down, followed by termination."

26. On or around July 5, 2009, Jackson asked Abdulahi to see him in his office after a store walk-through with Abdulahi and two other managers. During said meeting, Jackson criticized Abdulahi with statements such as, "I see that you do not have any dirt on your shirt or pants because you did not work hard," and "you better step down."

27. On or around July 25, 2009 Plaintiff was leaving work for vacation and Jackson asked him into his office. Jackson stated to Plaintiff that he had to step down or face possible termination.

28. On or about August 10, 2009, Jackson and Schneider called Abdulahi into a meeting. In this meeting, both men again urged Abdulahi to resign. Jackson informed Abdulahi that he was the sole cause for all problems in at the Cobb Parkway store, despite the fact that there were eleven (11) additional assistant managers. Jackson could not provide examples of Abdulahi's negative work performance.

29. On August 13, 2009, Abdulahi filed a formal charge of discrimination with EEOC, detailing the harassment from Ray and Jackson, his complaints of same, and the adverse consequences he suffered as a result.

30. On September 18, 2009, Jackson issued Abdulahi a negative performance review. Again, the review was not supported by Abdulahi's actual performance. Jackson provided little to no detail as to what was unsatisfactory about Abdulahi's performance.

31. On September 29, 2009, Abdulahi filed an amendment to his EEOC charge, alleging retaliation with respect to the September 18, 2009, negative performance review.

32. On October 30, 2009, Abdulahi was terminated by Ray.

33. The reason given was that Abdulahi had left the gate to the "Garden Center" open during his shift on October 21, 2009. This was false. The Garden Center doors had been locked.

34. On November 4, 2009, Abdulahi filed an amended EEOC charge of retaliation, related to his termination.

35. After a two-and-a-half year investigation, EEOC determined on July 5, 2012, that the evidence supported Abdulahi's claim that he was subjected to unwanted discrimination and harassment, based on his national origin and age, and that he was retaliated against for voicing his concerns.

36. EEOC attempted to facilitate a resolution of the dispute through its conciliation process, but conciliation failed. EEOC issued a notice of Right to Sue to Abdulahi on September 26, 2012.

## SUBSTANTIVE CLAIMS

### Title VII

37. Title VII forbids an employer to deny an employee equal opportunities on the basis of that employee's national origin, race, or ethnicity.

38. Title VII further forbids the taking of adverse employment action against an employee in retaliation for opposing conduct the employee reasonably believes to be in violation of Title VII.

39. Based on the facts set forth herein, and additional evidence to be presented at trial, Wal-Mart denied Abdulahi equal employment opportunities based on his national origin, ethnicity, and race, through harassment by its agents and employees, a series of adverse employment actions, and ultimately termination, during 2009.

40. Based on the facts set forth herein, and additional evidence to be presented at trial, Wal-Mart retaliated against Abdulahi for his opposition to conduct he reasonably believed to be discriminatory, through harassment by its agents and employees, a series of adverse employment actions, and ultimately termination, during 2009.

41. Wal-Mart's violations of Title VII were willful, knowing, malicious, or carried out in reckless disregard for their lawfulness.

42. Wal-Mart is liable for all damages resulting from its violations of Title VII, including economic, compensatory, and punitive damages, plus attorneys' fees and costs.

### Section 1981

43. Section 1981 forbids an employer to deny an employee equal opportunities on the basis of that employee's national origin, race, or ethnicity.

44. Section 1981 further forbids the taking of adverse employment action against an employee in retaliation for opposing conduct the employee reasonably believes to be in violation of federal anti-discrimination law.

45. Based on the facts set forth herein, and additional evidence to be presented at trial, Wal-Mart denied Abdulahi equal employment opportunities based on his national origin, ethnicity, and race, through harassment by its agents and employees, a series of adverse employment actions, and ultimately termination, during 2009.

46. Based on the facts set forth herein, and additional evidence to be presented at trial, Wal-Mart retaliated against Abdulahi for his opposition to conduct he reasonably believed to be discriminatory, through harassment by its

agents and employees, a series of adverse employment actions, and ultimately termination, during 2009.

47.     Wal-Mart's violations of Section 1981 were willful, knowing, malicious, or carried out in reckless disregard for their lawfulness.

48.     Wal-Mart is liable for all damages resulting from its violations of Section 1981, including economic, compensatory, and punitive damages, plus attorneys' fees and costs.

## ADEA

49.     ADEA forbids an employer to deny an employee equal opportunities on the basis of that employee's age.

50.     ADEA further forbids the taking of adverse employment action against an employee in retaliation for opposing conduct the employee reasonably believes to be in violation of ADEA.

51.     Based on the facts set forth herein, and additional evidence to be presented at trial, Wal-Mart denied Abdulahi equal employment opportunities based on his age, through harassment by its agents and employees, a series of adverse employment actions, and ultimately termination, during 2009.

52.     Based on the facts set forth herein, and additional evidence to be presented at trial, Wal-Mart retaliated against Abdulahi for his opposition to conduct he reasonably believed to be discriminatory, through harassment by its

agents and employees, a series of adverse employment actions, and ultimately termination, during 2009.

53. Wal-Mart's violations of ADEA were willful, knowing, malicious, or carried out in reckless disregard for their lawfulness.

54. Wal-Mart is liable for all damages resulting from its violations of ADEA, including economic and liquidated damages, plus attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A) Afford Plaintiff a trial by jury on all issues so triable;

B) Award to Plaintiff all lost wages from the date of his termination until the date of judgment;

C) Award to Plaintiff liquidated damages in an amount equal to his lost wages from the date of his termination until the date of judgment;

D) Award to Plaintiff compensatory damages for all non-economic injuries suffered by him as a result of Defendants' unlawful acts;

E) Award to Plaintiff punitive damages in order to deter future unlawful conduct by Defendant and those similarly-situated;

F) Deem Plaintiff a prevailing party and award him attorneys' fees and expenses of litigation;

G) Award Plaintiff pre-judgment and post-judgment interest;

H) Award Plaintiff such other equitable or monetary relief as the Court deems just and proper, including reinstatement, reformation and restoration of retirement and other benefits and emoluments of employment, and retroactive seniority for all purposes.

Respectfully submitted, this December 14, 2012.

/s/ James E. Radford, Jr.
James E. Radford, Jr.
Georgia Bar No. 108007
*Counsel for Plaintiff*

James Radford, LLC
545 N. McDonough St. Suite 212
Decatur, Georgia 30030
(678) 369-3609
james@jamesradford.com