UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IBRAHIM ABDULAHI,

    Plaintiff,

v.

WAL-MART ASSOCIATES, INC.
WAL-MART STORES, INC., and
WAL-MART STORES EAST, L.P.,

    Defendants.

Civil Action File No.
1:12-CV-04330-SCJ-JFK

**PLAINTIFF'S MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE AND BRIEF IN SUPPORT**

Plaintiff Ibrahim Abdulahi moves for sanctions against Wal-Mart for spoliation of evidence. Sanctions are warranted because of Wal-Mart's *willful* and *admitted* destruction of critical video evidence related to Mr. Abdulahi's discrimination and retaliation claims against Wal-Mart. Wal-Mart claims that it terminated Mr. Abdulahi for leaving the entrance to the store's Garden Center unlocked overnight, but there is a significant factual dispute as to whether the entrance was in fact locked on the night in question. While taking the deposition of Store Manager Demetrius Jackson, Mr. Abdulahi and his counsel learned for the first time that video footage once existed showing whether the entrance was

locked. Jackson admitted that, although he knew that the footage was relevant to a potential legal claim by Mr. Abdulahi, he took *no steps* to preserve the footage, thereby causing its destruction.

Wal-Mart should be sanctioned because it knowingly destroyed the video footage (critical evidence regarding pretext and but-for causation in this lawsuit) in violation of multiple preservation duties, and because destruction of the footage is highly prejudicial to Mr. Abdulahi. Mr. Abdulahi requests the following sanctions be entered against Wal-Mart:

1.  an adverse inference that the destroyed video footage contained evidence favorable to Mr. Abdulahi;

2.  denial of Wal-Mart's motion for summary judgment with regard to pretext and but-for causation;

3.  a jury instruction that destruction of the video footage is evidence of pretext and that retaliation was the but-for cause of Mr. Abdulahi's termination; and

4.  an award of all costs and fees (including attorneys' fees) incurred by Mr. Abdulahi because of Wal-Mart's destruction of the video footage.

## Background

Mr. Abdulahi began his employment with Wal-Mart in 1994. In August 2009, after suffering from repeated acts of discrimination and retaliation based on his race and national origin at the hands of his supervisors and store manager, Mr. Abdulahi filed an EEOC charge against Wal-Mart. Several months later, Wal-

Mart terminated Mr. Abdulahi's employment, allegedly for leaving the entrance to the store's Garden Center unlocked overnight on October 23, 2009. *See* Jackson dep., p. 60.[1]

At his deposition, Store Manager Demetrius Jackson testified that, because Mr. Abdulahi had been issued a "Decision-Day Coaching" on October 9, 2009, the disciplinary consequence for Mr. Abdulahi leaving the entrance unlocked on October 23, 2009 was termination. *See id.*, p. 59. Jackson testified that he arrived at the store on the morning in question and "saw the chains not up and the doors not locked." *Id.*, p. 61. Jackson could not definitively recall what time he arrived at the store that morning, but testified that the entrance was supposed to be locked "until daylight … just whenever the daylight came. It may have been 7:00, it may have been 7:30." *Id.*, pp. 61-64.

Upon finding the entrance unlocked, Jackson stated that he spoke with Mr. Abdulahi and Mark Connor (the co-manager on duty that night with Mr. Abdulahi) and that both men admitted that the entrance was unlocked overnight. *See id.*, pp. 62, 65. Mr. Abdulahi adamantly denies that he ever made

---

[1] The complete deposition transcript of Demetrius Jackson was filed by Wal-Mart with its motion for summary judgment. *See* Dkt. 36-11. Excerpts from Mr. Jackson's deposition relevant to this motion are attached to this brief as Exhibit A.

such an admission to Jackson, or that the entrance was unlocked overnight. *See* Abdulahi dep., pp. 276-77;[2] Abdulahi Decl. ¶ 32.[3]

Jackson also testified that he reviewed video footage to confirm that the entrance was unlocked overnight. *See* Jackson dep., pp. 62, 65. Jackson's deposition was the *first time* that Wal-Mart informed Mr. Abdulahi and his counsel that video footage relevant to Mr. Abdulahi's termination ever existed (despite the fact that Wal-Mart was obligated to produce the footage pursuant to Mr. Abdulahi's discovery requests).[4]

Jackson further revealed that he took *no action* to preserve the video footage, despite knowing that Mr. Abdulahi might bring a legal claim based on his termination *and* that the video footage could have been important evidence regarding the basis for Mr. Abdulahi's termination. *See id.*, pp. 65-66. Specifically, Jackson stated the following:

---

[2] The complete deposition transcript of Ibrahim Abdulahi was filed by Wal-Mart with its motion for summary judgment. *See* Dkt. 36-1 through 36-7. Excerpts from Mr. Abdulahi's deposition relevant to this motion are attached to this brief as Exhibit B.

[3] The Declaration of Ibrahim Abdulahi was filed by Mr. Abdulahi with his response to Wal-Mart's motion for summary judgment. *See* Dkt. 38-1. A true and correct copy of the Declaration is attached to this motion as Exhibit C.

[4] The video footage at issue would have been responsive to Requests for Production No. 4, 5, 6, and 10. *See* Plaintiff's First Request for Production of Documents to Defendant (attached to this motion as Exhibit D). To date, Wal-Mart has not produced any video footage to Mr. Abdulahi pursuant to these requests.

Q:     And you say you looked at some kind of footage that showed it being unlocked?

A:     Yeah.  I would have checked the camera that morning to see if it was up all night or if it was down.

Q:     Do you have a specific recollection of seeing this image of it being unlocked?

A:     Uh-huh.  Yeah, yes.

Q:     At that time, did y'all have some concern that Mr. Abdulahi might bring a legal claim related to his termination?

A:     Can you repeat that?

Q:     At that time, did you have some concern that Mr. Abdulahi might bring a legal claim regarding his termination?

A:     I'm sure I probably thought about it.  However, I had to ask myself, if another manager did this, what would be the outcome, and made a consistent decision that held him accountable.

Q:     Were you aware that, you know, whatever was on that surveillance video could be important evidence regarding the basis for his termination?

A:     Sure.

Q:     Did you take any steps to preserve that?

A:     I did not.

*See id.*, pp. 65-66.

Given the significant factual dispute as to whether the entrance was

locked, the video footage knowingly destroyed by Wal-Mart represents the *most*

*critical evidence* on the issues of pretext and but-for causation in this lawsuit. These issues could have been dispositively proven with the video footage. But the footage was irretrievably lost when Wal-Mart allowed for its destruction by failing to take *any steps* to preserve it, despite knowing that the footage was highly relevant to Mr. Abdulahi's claims. Sanctions are necessary to cure the extreme prejudice suffered by Mr. Abdulahi at the hands of Wal-Mart's intentional misconduct.

## Argument

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 301 (11th Cir. Feb. 2, 2009) (internal quotations and citation omitted). A district court's "broad discretion" to impose sanctions for spoliation of evidence stems from the court's "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Sanctions function to "prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.*

Where a court finds that a party spoliated relevant evidence, the following five factors must be considered to determine whether sanctions are warranted:[5] (1) whether the party moving for sanctions is prejudiced as a result of the destruction of evidence; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the spoliating party acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded.[6]  *Id.* at 945.

Here, there is no question that Wal-Mart destroyed critical video footage that it had a duty to preserve, as Store Manager Demetrius Jackson admitted to this at his deposition. The footage, which Jackson testified showed whether the entrance to the Garden Center was locked overnight on October 23, 2009, was the *single most* relevant piece of evidence for Mr. Abdulahi to prove that Wal-Mart's stated reason for his termination was pretextual and that retaliation was the but-for cause of his termination.  It is impossible to cure the prejudice Mr. Abdulahi

---

[5] While the Eleventh Circuit analyzed spoliation sanctions in *Flury* in the context of a diversity suit and relied on Georgia law in explaining the five factors, the court also found that federal law governs spoliation sanctions and that Georgia law on spoliation is consistent with federal law.  427 F.3d at 944.  Thus, the five *Flury* factors are applicable in this case. *Connor v. Sun Trust Bank*, 546 F. Supp. 2d 1360, 1375 n.6 (N.D. Ga. 2008).

[6] The fifth *Flury* factor is not discussed in this motion because the parties have not retained expert witnesses.

faces at summary judgment and before a jury on these issues without sanctions against Wal-Mart.

Jackson's testimony (that he knew that the footage would be relevant to a legal claim by Mr. Abdulahi) further shows Wal-Mart's culpable state of mind when it chose to do nothing to preserve the video footage, ultimately causing the destruction of the footage. This, coupled with Wal-Mart's disregard of its duty to preserve all evidence related to Mr. Abdulahi's termination because of the ongoing EEOC investigation, demands action by the Court.

Mr. Abdulahi is entitled to an adverse inference against Wal-Mart with regard to pretext and but-for causation on summary judgment and an adverse jury instruction at trial.  Given Wal-Mart's history of destruction of relevant video footage in other cases, an award of Mr. Abdulahi's costs and fees incurred in bringing this motion before the Court is also warranted to deter Wal-Mart from continuing to ignore its preservation duties.

**1.      Wal-Mart destroyed evidence that it had a duty to preserve.**

*A.      Wal-Mart had a duty to preserve the video footage because it knew that the footage would be relevant to future litigation.*

The duty to preserve evidence arises when a party receives "notice that the evidence is relevant to litigation," or (during the period before litigation) when the party "should have known that the evidence may be relevant to future

litigation." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). "A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Patton v. Wal-Mart Stores, Inc.*, 2013 WL 6158467, at *3 (D. Nev. Nov. 20, 2013). Once a potential claim is identified, "a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Id.* (internal quotations and citation omitted).

Here, the Court need not determine whether Wal-Mart should have known that the video footage would be relevant to future litigation—because Store Manager Demetrius Jackson *admitted* that he was aware that "whatever was on that surveillance video could be important evidence regarding the basis of [Mr. Abdulahi's] termination." *See* Jackson dep., p. 65-66. Jackson's testimony regarding the video footage provides more than enough basis to establish that Wal-Mart knew that it had a duty to preserve the video footage.

**B.** **Mr. Abdulahi's filing of EEOC charges against Wal-Mart triggered Wal-Mart's duty to preserve the video footage.**

An employer's knowledge that an employee filed an EEOC charge provides the employer with notice to anticipate litigation, and thus the duty to preserve evidence relevant to the charge begins *on the date the employer receives notice* of the EEOC charge. *EEOC v. New Breed Logistics*, 2012 WL 4361449, at *6

(W.D. Tenn. Sept. 25, 2012); *Zublake v. UBS Warburg* LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). The duty to preserve applies not only to relevant documents, but also to electronic evidence, including video footage. *New Breed Logistics*, 2012 WL 4361449, at *6-7. In addition to this general preservation duty, EEOC regulations require an employer to preserve personnel records relevant to a formal charge of discrimination until final disposition of the charge or legal action. *See* 29 C.F.R. § 1602.14.

Mr. Abdulahi filed an EEOC charge against Wal-Mart on August 13, 2009 for discrimination and retaliation. Because Mr. Abdulahi filed the EEOC charge in August, Wal-Mart was certainly aware on the morning of October 23, 2009 (when Demetrius Jackson testified that he viewed the video footage) that the footage was relevant to Mr. Abdulahi's EEOC charge. Wal-Mart was reminded of its duty to preserve the footage on November 3, 2009, when Mr. Abdulahi amended his EEOC charge to include his termination.  Despite its obligation to preserve all relevant evidence concerning Mr. Abdulahi's EEOC charges and termination, Wal-Mart destroyed the video footage.

**2.      The *Flury* factors all tip in Mr. Abdulahi's favor and sanctions against Wal-Mart are warranted.**

*A.      Wal-Mart's destruction of critical evidence has incurably prejudiced Mr. Abdulahi in this lawsuit.*

In Title VII discrimination and retaliation cases, the burden upon an employer to show that a legitimate and nondiscriminatory reason was the cause of an adverse employment action is "exceedingly light." *Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1019 (11th Cir. 1994). The burden becomes more exacting when it shifts back to the employee to disprove pretext by a preponderance of the evidence. *Id*. As the court recognized in *Brown v. Chertoff*, 563 F. Supp. 2d 1372 (S.D. Ga. 2008), "employment discrimination cases hinge on a plaintiff's ability to show improper considerations motivated an adverse employment action (i.e., termination). So a record documenting those considerations is quite relevant; the destruction of that very record, then, naturally causes prejudice." *Id.* at 1378-79.

Here, Mr. Abdulahi vehemently disputes Wal-Mart's stated reason for his termination—that he left the entrance to the Garden Center unlocked overnight on October 23, 2009. On summary judgment, Wal-Mart satisfies its "exceedingly light" burden by simply stating that it terminated Mr. Abdulahi for leaving the entrance unlocked, and Mr. Abdulahi is left with the difficult burden of

disproving this reason. The video footage destroyed by Wal-Mart represents the *single most critical piece of evidence* on this issue. Mr. Abdulahi suffers extreme prejudice from Wal-Mart's destruction of the footage at summary judgment and at trial because the footage could definitively prove pretext and but-for causation. *See Flury*, 427 F.3d at 944-45 (finding extreme prejudice where the plaintiff allowed for the destruction of critical evidence in the case before the defendant had the opportunity to examine the evidence); *see also Brown*, 563 F. Supp. 2d at 1378 (finding that an employee suffered prejudice in proving a discrimination claim where his employer destroyed notes from an internal investigation into the employee's discrimination claims because the notes would have "shed light on the decision-making process that led to [the employee's] termination" and may have been useful to undermine the employer's proffered legitimate reason for termination).

Demetrius Jackson's testimony as to what he saw on the video footage is no substitute for the actual footage and cannot cure the extreme prejudice suffered by Mr. Abdulahi. *Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997) (*per curium*), is instructive on this point. In *Bashir*, the key trial issue was whether the train that killed the decedent was traveling at an excessive speed. *Id.* at 930. The plaintiff asked that an adverse inference be drawn that the train had exceeded

the federal speed limit (80 miles per hour) since the defendants failed to preserve the train's speed record tape. *Id.* at 931.

The Eleventh Circuit found that an adverse inference was not warranted "under the particular circumstances of the instant case," which included testimony from two witnesses that the train was traveling 70 miles per hour at the time of the accident. *Id.* at 931-32. In finding the witnesses' testimony reliable, the court noted that the witnesses had no control over the "content or fate" of the speed tape, and that the witnesses gave their statements right after the accident, at a time when the speed tape was still in existence and the witnesses knew that the tape would also show the speed of the train at the time of the accident. *Id.* at 932. Given these circumstances, the court concluded that there was "exceedingly strong" evidence that the train was in fact traveling 70 miles per hour at the time of the accident and denied the request for sanctions. *Id.*

Here, Jackson is the only witness who saw the video footage, and his unreliable testimony pales in comparison to the "exceedingly strong" evidence in *Bashir*. Unlike the witnesses in *Bashir*, Jackson *did* have control over the "content or fate" of the video footage, and as the store manager, it was Jackson's responsibility preserve the video footage. And, unlike the witnesses in *Bashir*, Jackson's testimony about what he saw on the video footage came *after* he knew the footage was destroyed, further decreasing the reliability of his testimony. As

the ultimate decisionmaker regarding Mr. Abdulahi's termination, Jackson had both motive and opportunity to ensure that the footage was destroyed.

Further, as the court found in *Brown* (a Title VII case), the testimony of Jackson regarding the contents of the video footage is no substitute for the actual footage itself. 563 F. Supp. 2d at 1379. In *Brown*, the employer destroyed notes of the internal investigator who reviewed the employee's discrimination claims and the employee moved for sanctions. The employer argued that the testimony of the investigator regarding her notes cured any prejudice from the destruction. *Id.* The court disagreed, finding that the notes were more reliable than the investigator's memory. *Id.* The employee was essentially questioning the investigator's credibility and memory capability and the notes would have aided the employee in doing so. *Id.* The court found that these issues of credibility were to be "tested and determined" by a jury at trial. *Id.*

Similarly, Jackson's testimony four years after-the-fact about what he saw on the video footage is no substitute for viewing the actual footage. That Jackson could not remember exactly what time he came into the store or whether the entrance should have still been locked at the time he came into the store on the morning in question shows the effect that the passage of time had on Jackson's memory. Mr. Abdulahi disputes that he admitted to Jackson that he left the entrance unlocked, and the only other evidence Jackson relied on in his decision

-14-

to terminate Mr. Abdulahi was the video footage. Mr. Abdulahi is entitled to challenge Jackson's credibility and memory before a jury as to what Jackson saw on the video footage.

### B.    *Wal-Mart acted in bad faith in destroying critical evidence.*

In the Eleventh Circuit, something less than malice, *Flury*, 427 F.3d at 946, but more than mere negligence, *Bashir*, 119 F.3d at 931, will suffice to show bad faith warranting spoliation sanctions. In determining bad faith, "[t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." *Flury*, 427 F.3d at 946. In *Bashir* (discussed on pages 12-13), the court did not award sanctions where there was strong evidence (other than the spoliated speed tape) showing the speed of the train at the time of the accident, *and* where there was no evidence that the defendants intentionally lost or destroyed the speed tape. 119 F.3d at 931. The *Bashir* Court specifically noted that it did not decide the issue of whether "a wholly unexplained loss of evidence might in other circumstances [i.e., in the absence of the "strong evidence" showing the train's speed] warrant an inference of bad faith and thus an adverse inference." *Id*. at 932.

Using the same balancing framework in *Flury*, the court found sanctions appropriate where "[p]rejudice to the defendant was great, and culpability rested

solely upon the plaintiff." 427 F.3d at 946. Similarly, in G*raff v. Baja Marine Corporation*, 310 Fed.Appx. 298 (11th Cir. Feb. 2, 2009), the Eleventh Circuit found spoliation sanctions warranted where: (1) there was "no dispute" that the plaintiffs destroyed evidence when litigation was reasonably foreseeable; (2) the defendants suffered incurable and significant prejudice because the plaintiffs destroyed "*the* critical piece of evidence" in the case; and (3) the plaintiffs were the more culpable party and caused the defendants substantial prejudice. *Id*. at 301-02 (emphasis in original).

Here, Store Manager Demetrius Jackson's deposition testimony conclusively shows that Wal-Mart acted with something more than mere negligence in destroying the video footage. Jackson admitted that he knew that the video footage would be relevant to a potential legal claim brought by Mr. Abdulahi. *See* Jackson dep., pp. 65-66. Despite this knowledge, Wal-Mart took no steps preserve the footage, in blatant disregard for its preservation duties stemming from Mr. Abdulahi's EEOC charge. This constitutes bad faith. *See Britton v. Wal-Mart Stores East, L.P.*, 2011 WL 3236189, at *13 (N.D. Fla. June 8, 2011) (finding bad faith shown where Wal-Mart intentionally let video evidence be destroyed over time despite knowing that claims were coming).

Even without Jackson's bold admissions, a finding of bad faith is warranted here after weighing Wal-Mart's culpability for destroying the video

footage against the resulting prejudice to Mr. Abdulahi. As outlined in Section 2.A, the incurable prejudice to Mr. Abdulahi directly resulting from Wal-Mart's destruction of the video footage is significant because the footage was the *key piece of evidence* on the issues of pretext and but-for causation. In addition to the extreme prejudice, Wal-Mart was the only party in a position to preserve the footage, and it admittedly destroyed evidence that it knew was relevant to Mr. Abdulahi's claims. A finding of bad faith is warranted.

**3.    The Court should enter an adverse inference against Wal-Mart and award Mr. Abdulahi the costs and fees incurred because of Wal-Mart's destruction of the video footage.**

Courts are permitted to enter the following sanctions for spoliation of evidence: "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Flury*, 427 F.3d at 945 (citation omitted). The purpose of an adverse inference sanction is based on two principles: (1) the "common sense observation" that a party who knows that evidence is relevant to litigation and proceeds to destroy it is more likely to have been "threatened" by the evidence than is the party in the same situation who does not destroy it; and (2) allowing the trier of fact to draw an adverse inference "presumably deters the parties from destroying relevant evidence before it can be introduced at trial." *Millenkamp v.*

*Davisco Foods Intern., Inc.* 562 F.3d 971, 981 (9th Cir. 2009) (internal quotations and citation omitted). Pursuant to its inherent authority, courts may also award the moving party its fees and costs incurred from filing the motion for sanctions. *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1287-88 (M.D. Fla. 2009).

Because Wal-Mart destroyed critical video footage that definitively showed whether the entrance to the Garden Center entrance was locked overnight on October 23, 2009, and the *Flury* factors tip in Mr. Abdulahi's favor, an adverse inference should be drawn against Wal-Mart that the destroyed video footage contained evidence favorable to Mr. Abdulahi. As part of this inference, Wal-Mart's motion for summary judgment on the issues of pretext and but-for causation should be denied, and the Court should instruct the jury that destruction of the video footage is evidence of pretext and that retaliation was the but-for cause of Mr. Abdulahi's termination. Wal-Mart should also be required to pay Mr. Abdulahi's costs and fees (including attorneys' fees) incurred because of Wal-Mart's destruction of the video footage.[7] Sanctions are warranted not only to cure the significant prejudice suffered by Mr. Abdulahi, but also to deter Wal-Mart from destroying relevant evidence in other cases.

---

[7] Upon request of the Court, Mr. Abdulahi will submit a full accounting of all fees and costs associated with the preparation of this motion.

Wal-Mart is no stranger to sanctions for destroying relevant video evidence,[8] and the court's decision against Wal-Mart in *Britton v. Wal-Mart Stores East, L.P.*, 2011 WL 3236189 (N.D. Fla. June 8, 2011), supports the sanctions requested in this motion. In *Britton*, the court applied similar sanctions against Wal-Mart for destruction of video footage in a false imprisonment case. *Id.* at *14. The court prohibited Wal-Mart from presenting a defense of probable cause where (as it did in this case) Wal-Mart intentionally let video evidence be destroyed over time, despite knowing that claims were coming. *Id.* The court in *Britton* also awarded attorneys' fees to the plaintiff incurred in bringing the motion for sanctions. *Id.*

Given the extreme prejudice Mr. Abdulahi suffers in this lawsuit directly resulting from Wal-Mart's destruction of critical video footage, and Wal-Mart's repeated disregard for its obligation to preserve evidence (in this case and in others), the sanctions requested by Mr. Abdulahi in this motion are appropriate.

---

[8] *See Patton v. Wal-Mart Stores, Inc.*, 2013 WL 6158467, at *9 (D. Nev. Nov. 20, 2013) (finding Wal-Mart destroyed relevant video footage in a slip and fall case and an adverse inference jury instruction warranted); *Woodard v. Wal-Mart Stores East, L.P.*, 801 F. Supp. 2d 1363, 1375 (M.D. Ga. 2011) (sanctioning Wal-Mart for destroying video footage with a jury instruction that, if the jury found that Wal-Mart lost or destroyed the footage in bad faith, then a rebuttable presumption arose that the footage contained evidence harmful to Wal-Mart); *Wal-Mart Stores, Inc. v. Lee*, 290 Ga. App. 541, 545-46 (2008) (affirming sanctions imposed against Wal-Mart for destroying video footage in a premises liability case).

# Conclusion

There is no question that Wal-Mart admittedly destroyed critical video evidence relevant to Mr. Abdulahi's claims against Wal-Mart for discrimination and retaliation. The prejudice suffered by Mr. Abdulahi as he prepares to meet the high burdens he must overcome to show pretext and but-for causation in this employment discrimination suit, is immeasurable and incurable without action by the Court.

Given Wal-Mart's admission that it destroyed this critical video footage, in blatant disregard for its duty to preserve all evidence related Mr. Abdulahi's EEOC charges *and* its duty to preserve evidence related to potential future legal claims, an adverse inference is warranted for pretext and but-for causation. And, given Wal-Mart's repeated disregard for its preservation duties (in this case and in others), an award of Mr. Abdulahi's costs and fees incurred as a result of Wal-Mart's destruction of the video footage is also warranted to deter Wal-Mart from destroying relevant evidence in the future.

Submitted this 14th day of January, 2014.

/s/ James E. Radford, Jr.
JAMES E. RADFORD, JR.
Georgia Bar No. 108007
CALEB GROSS
Georgia Bar No. 960323

James Radford, LLC
545 N. McDonough Street
Suite 212
Decatur, GA 30030
james@jamesradford.com
caleb@jamesradford.com
Telephone: (678) 369-3609

## <u>CERTIFICATE OF COMPLAINCE WITH LOCAL RULES</u>

Pursuant to Local Rules 5.1(C) and 7.1(D), I certify that the foregoing

motion was prepared in Book Antiqua 13-point font.

Submitted this 14th day of January, 2014.

**JAMES RADFORD, LLC**


/s/ James E. Radford, Jr.
James E. Radford, Jr.
Georgia Bar No. 108007

## CERTIFICATE OF SERVICE

This is to certify that on January 14, 2014, a copy of **Plaintiff's Motion for Sanctions for Spoliation of Evidence and Brief in Support** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

**JAMES RADFORD, LLC**

/s/ James E. Radford, Jr.
James E. Radford, Jr.
Georgia Bar No. 108007