# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IBRAHIM ABDULAHI,

    Plaintiff,

v.

WAL-MART ASSOCIATES, INC.
WAL-MART STORES, INC., and
WAL-MART STORES EAST, L.P.,

    Defendants.

Civil Action File No.
1:12-CV-04330-SCJ-JFK

## PLAINTIFF'S REPLY IN SUPPORT OF HIS
## MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

One of the critical issues this Court must determine in resolving Wal-Mart's

summary judgment motion, and that the jury must resolve at trial, is whether

Wal-Mart's stated reason for Mr. Abdulahi's termination (that he left an entrance

to the store unlocked overnight) is legitimate, or whether it is mere pretext for

discrimination and retaliation. To support its "legitimate" reason for Mr.

Abdulahi's termination, Wal-Mart relies on three pieces of evidence: (1) an alleged

confession from Mr. Abdulahi to Store Manager Demetrius Jackson that the

entrance was unlocked overnight; (2) an alleged confession from Mark Connor,

the other assistant manager on duty overnight with Mr. Abdulahi, that he

entrance was unlocked overnight; and (3) video footage that Jackson alleges showed that the entrance was left unlocked overnight.

Mr. Abdulahi vehemently disputes that he admitted to Jackson that the entrance was unlocked overnight, and testified at his deposition that the entrance was locked. Jackson's testimony of what Mark Connor said to him about the entrance is inadmissible hearsay, as Wal-Mart did not depose Connor or obtain an affidavit from him confirming Jackson's testimony. The only piece of indisputable evidence on the critical issue of whether the entrance was unlocked overnight is the video footage.

But Wal-Mart admits that it destroyed the footage sometime after it received Mr. Abdulahi's November 4, 2009 EEOC charge, which provided Wal-Mart more than enough notice that it needed to preserve the footage. And Jackson acknowledged at his deposition that he allowed the footage to be destroyed (by doing nothing to preserve it), despite the fact that he knew that the footage could be important evidence regarding the basis of Mr. Abdulahi's termination, at a time when he had a concern that Mr. Abdulahi would bring a legal claim regarding his termination. Sanctions are necessary to address the significant and severe prejudice suffered by Mr. Abdulahi at the hands of Wal-Mart's reckless conduct.

1.     **Mr. Abdulahi timely filed his request for spoliation sanctions against Wal-Mart.**

Neither the Federal Rules of Civil Procedure nor this Court's local rules contain a specific deadline for the filing of a motion for spoliation sanctions. Mr. Abdulahi's request for sanctions against Wal-Mart for destruction of the highly relevant video footage was a timely and appropriate response to Wal-Mart's motion for summary judgment. Mr. Abdulahi asked for the video footage through discovery requests, and Wal-Mart did not produce the footage because it was no longer in existence. Filing supplemental discovery or a motion to compel before the close of discovery (as suggested by Wal-Mart in its response brief) would have been a fruitless venture—how could the Court compel Wal-Mart to produce footage that Wal-Mart admits no longer existed?

The appropriate time to seek redress for Wal-Mart's spoliation came when Wal-Mart attempted to prove (in its summary judgment motion) that it terminated Mr. Abdulahi's employment because he allegedly left the entrance to the Garden Center unlocked overnight. Demetrius Jackson testified that he viewed the footage as part of his investigation into whether the entrance was unlocked. (*See* Jackson dep., pp. 62, 65.) Wal-Mart's destruction of the footage deprived Mr. Abdulahi of the opportunity to review the footage and potentially use it in responding to Wal-Mart's summary-judgment motion. Mr. Abdulahi noted Wal-Mart's spoliation of

the footage in his response to Wal-Mart's summary-judgment motion [*see* Dkt. 38, p. 31], and filed the instant motion shortly thereafter.

Wal-Mart provides no legal support for its argument that the motion for sanctions is untimely. Mr. Abdulahi filed his request while Wal-Mart's motion for summary judgment was still pending, and this case has not yet been set for trial. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (declining to find motion for spoliation sanctions untimely when it was filed before the court ruled on the parties' dispositive motions and it was not filed on the eve of trial). Mr. Abdulahi also did not use the motion for sanctions as an improper attempt to reargue his response to Wal-Mart's summary-judgment motion. *Id.* Lastly, the relief requested by Mr. Abdulahi will not require the Court to reopen discovery or delay a trial. *Id.* In light of these circumstances, Mr. Abdulahi timely filed his request for sanctions.

**2.     Mr. Abdulahi's EEOC charge provided Wal-Mart with more than enough notice to preserve the video footage that directly related to his termination.**

Wal-Mart's obligation to preserve the footage stems from two separate duties. First, there is the general duty to preserve evidence that may be relevant to future litigation. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). In the context of an EEOC charge, the filing of a charge provides an employer with notice to

anticipate litigation, and the employer's duty to preserve all relevant evidence begins on the date the employer receives notice of the charge. *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). A second preservation duty comes from EEOC regulations, which require an employer to preserve "all personnel records relevant to [a charge of discrimination] or action until final disposition of the charge or the action." 29 C.F.R. § 1602.14.

The EEOC charge filed by Mr. Abdulahi on November 4, 2009 (when Wal-Mart admits that the footage still existed) provided more than enough notice to Wal-Mart to preserve the video footage. In the charge, Mr. Abdulahi states:

> On August 13, 2009, I filed EEOC charge number 410-2009-05337 while employed as an Assistant Manager. On September 18, 2009, I received a negative performance review. On October 30, 2009, I was discharged.
>
> I was not given any reason why I received a negative performance review. Demetrius Jackson (African American), Store Manager, informed me that I was discharged for leaving the padlock on the Garden Center door unlocked.
>
> I believe that I have been retaliated against due to my opposition to acts made unlawful by Title VII of the Civil Rights Act of 1964, as amended.

(*See* November 4, 2009 Charge of Discrimination.)[1]

---

[1] A true and correct copy of the November 4, 2009 Charge of Discrimination is attached to this brief as Exhibit A.

Mr. Abdulahi filed the November 4th charge (which amended his August 13, 2009 and September 29, 2009 charges against Wal-Mart) solely to include his October 30, 2009 termination.[2] Thus, the charge provided sufficient notice to Wal-Mart of Mr. Abdulahi's allegation that he was terminated for retaliatory reasons, with the pretext being that he left the Garden Center entrance unlocked. Upon receipt of the EEOC charge, Wal-Mart had an obligation to preserve any evidence it had pertaining to Mr. Abdulahi's termination. Because Store Manager Demetrius Jackson admitted that he reviewed the video footage as part of his investigation into whether the entrance was unlocked (*see* Jackson dep. pp. 62, 65), Wal-Mart's duty to preserve included the footage.

Wal-Mart's suggestion that it was Mr. Abdulahi's obligation in his EEOC charge to notify Wal-Mart to preserve the video footage is entirely without legal support. Under both the general duty of potential litigants to preserve evidence and EEOC regulations, employers are obligated to preserve all evidence related to a charge of discrimination or retaliation—the employee is not required to identify the evidence in the EEOC charge.

Without the testimony of Demetrius Jackson, the issue of Wal-Mart's preservation duties may be a closer call. But Jackson's testimony—that he knew

---

[2] True and correct copies of the August 13, 2009 and September 29, 2009 Charges of Discrimination are attached to this brief as Exhibits B and C, respectively.

the footage could be relevant to a future claim by Mr. Abdulahi but took no steps to preserve the footage (*see* Jackson dep. pp. 65-66)—shows that he either intentionally or recklessly allowed the video footage that he relied on to support his decision to terminate Mr. Abdulahi to be destroyed over time. Jackson's testimony alone is sufficient to find that Wal-Mart failed to comply with its preservation duties.

**3.     The video footage is the single most critical piece of evidence on the issues of pretext and but-for causation.**

After establishing a party's duty to preserve evidence, the next three factors to analyze in determining whether spoliation sanctions are warranted involve the prejudice suffered by the moving party as a result of the destruction of evidence, whether that prejudice can be cured, and the practical importance of the evidence. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). The video footage *is* the *single most critical piece of evidence* to show that Wal-Mart actually fired Mr. Abdulahi for illegal reasons because it is the *only* impartial and indisputable evidence on this issue.

Courts have recognized in employment discrimination cases that the destruction of any evidence that potentially documents an employer's improper motivations for terminating an employee "naturally causes prejudice." *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378-79 (S.D. Ga. 2008). In analyzing the prejudice

suffered by Mr. Abdulahi because of Wal-Mart's destruction of the video footage and the importance of the footage, it is critical to remember that Jackson never testified that he personally observed the Garden Center entrance unlocked when it should have been locked on October 23, 2009. Jackson testified that he could not remember exactly what time he arrived at the store on the morning of October 23, 2009 but that he saw the entrance was unlocked and he asked Mr. Abdulahi and Mark Connor whether the entrance was locked overnight. (*See* Jackson dep., pp. 61-64.)

Jackson testified that the three pieces of evidence that used to make his determination that the entrance was unlocked overnight (which ultimately formed the basis for Mr. Abdulahi's termination) were the two alleged confessions from Mr. Abdulahi and Mr. Connor and the video footage showing that the entrance was unlocked. (*Id.*, pp. 62, 65.) Mr. Abdulahi adamantly disputes that he ever made such an admission to Jackson, and testified that the entrance was locked overnight. (Abdulahi dep., pp. 276-77; Abdulahi Decl. ¶ 32.) Jackson's testimony regarding what Mr. Connor told him is inadmissible hearsay, and Wal-Mart did not take the deposition of Mr. Connor in this case nor did it obtain an affidavit from him confirming Jackson's account of the incident. It is absurd for Wal-Mart to argue that it was Mr. Abdulahi's obligation to depose Mark Connor in this case,

when Wal-Mart is the party seeking to rely on statements made by Mr. Connor to Jackson.

The video footage is so important in this case, and the prejudice to Mr. Abdulahi is so great, because it is the only piece of indisputable and impartial evidence that definitively showed whether the entrance to the Garden Center was locked overnight on the night in question. And the importance of the footage and the prejudice to Mr. Abdulahi cannot be cured by any of the additional evidence cited by Wal-Mart in its response brief (the email from Jackson to Cohen and the exit interview form) because none of this evidence is from an impartial source. The source of all of this evidence is Demetrius Jackson—the decisionmaker for Mr. Abdulahi's termination and the only person who knew about the footage before it was destroyed.

While Demetrius Jackson emailed Shawn Cohen stating that he intended to terminate Mr. Abdulahi for leaving the Garden Center entrance unlocked, he made no mention of the video footage in the email. (*See* email from D. Jackson to S. Cohen, Oct. 23, 2009, attached to this brief as Exhibit D). Jackson also failed to mention the video footage in Mr. Abdulahi's exit interview form. (*See* Exit Interview, attached to this brief as Exhibit E). If the video footage actually supported Jackson's reason for terminating Mr. Abdulahi, why did he not tell

Human Resource Manager Shawn Cohen about it in his email or include it as evidence in the exit interview form?

Wal-Mart's comparison of the facts of this case to those in *Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997), is misplaced. In *Bashir*, the issue before the court was whether the defendant should be sanctioned for failing to preserve a train's speed record tape in a train accident case. In finding that there was "exceedingly strong" evidence regarding the speed of the train at the time of the accident, the court relied on statements given by two witnesses right after the accident. *Id.* at 931-32. The court found the statements reliable because the statements were given at a time when the speed tape was still in existence and the witnesses knew that the speed tape would either confirm or disprove their statement regarding the speed of the train. *Id.* at 932. The witnesses also had no control over the "content or fate" of the speed tape. *Id.*

In this case, Jackson was the only person who knew about the video footage, and thus any statement he made in the email to Cohen or the exit interview form are not nearly as reliable as the statements from the witnesses in *Bashir*, because Jackson knew that no one else knew about the footage to review it.[3] Also, unlike

---

[3] Wal-Mart's assertion that Jackson knew that Wal-Mart's Human Resources might investigate the termination and look at the footage [*see* Dkt. 50, p. 12] is unsupported by any citation to Jackson's deposition testimony or an affidavit and should not be considered by the Court.

the witnesses in *Bashir*, Jackson *did* have control over the content and fate of the video footage—he was the only one that knew about it and was the only one in a position to preserve the footage. As the decisionmaker regarding Mr. Abdulahi's termination, Jackson had both motive and opportunity to ensure the destruction of the video footage.

Wal-Mart also concedes that Mr. Abdulahi has a right to challenge Jackson's credibility and memory before a jury regarding what Jackson allegedly saw on the video footage. [*See* Dkt. 49, pp. 14-15.] The video footage is more reliable than Jackson's memory of what happened more than four years ago on October 23, 2009. The fact that Jackson could not remember exactly what time he arrived at the store on the morning in question or whether the entrance should have been locked at that time (*see* Jackson dep., pp. 61-64) show the effect that the passage of time has had on Jackson's memory. These issues of credibility must be "tested and determined" by a jury at trial. *Brown*, 563 F. Supp. 2d at 1379.

**4.    Sanctions are warranted because Wal-Mart's destruction of the video footage shows at least a reckless disregard of its preservation duties.**

The other factor the Court must consider in determining whether spoliation sanctions are appropriate is whether Wal-Mart acted in bad faith in allowing for the destruction of the video footage. Determination of bad faith involves a balancing test, and "[t]he court should weigh the degree of the spoliator's

culpability against the prejudice to the opposing party." *Flury*, 427 F.3d at 946. In showing Wal-Mart's bad faith, Mr. Abdulahi is not required to show that Wal-Mart or Jackson intentionally erased the video footage or that Wal-Mart destroyed the footage as a "litigation tactic." [*See* Dkt. 50, pp. 9, 14.] A finding of bad faith also does not require a showing that Wal-Mart ignored a request from Mr. Abdualhi to preserve the video footage. [*See id.*, pp. 16, 17.] A finding of bad faith *only* requires showing that Wal-Mart acted with something more than mere negligence, *Bashir*, 119 F.3d at 931, and less than malice, *Flury*, 427 F.3d at 946.[4]

"Reckless" behavior is that which creates "a substantial and unjustifiable risk of harm to others" and represents a "conscious (and sometimes deliberate) disregard for or indifference to that risk." BLACK'S LAW DICTIONARY (9th ed. 2009). Here, there is strong evidence that Wal-Mart acted with at least a reckless disregard of its preservation duties when it allowed for the destruction of the video footage. Jackson admitted that he "probably thought about" the fact that Mr. Abdulahi might bring a legal claim regarding his termination when he viewed the video footage, and that he was aware that what was on the video footage could be important evidence regarding the basis for Mr. Abdulahi's termination.

---

[4] Wal-Mart's reliance on *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326 (3d Cir. 1995), is inapposite. Each federal circuit has crafted a different test for what constitutes "bad faith" for awarding spoliation sanctions. The Eleventh Circuit does not require a showing of fraudulent intent for a finding of bad faith. *See Bashir*, 119 F.3d at 931; *Flury*, 427 F.3d at 946.

(*See* Jackson dep., pp. 65-66.) Wal-Mart also ignored its duty to preserve the footage that began when Mr. Abdulahi filed his November 4, 2009 EEOC charge against Wal-Mart. By allowing the footage to be destroyed (by doing nothing to preserve it), Wal-Mart acted in reckless disregard of its preservation duties.

Even without a specific finding of recklessness, under the balancing test in *Flury*, a finding of bad faith may be warranted solely by weighing the spoliating party's culpability for destroying evidence against the resulting prejudice to the moving party. In *Bashir*, the court specially noted that it did not decide the issue of whether "a wholly unexplained loss of evidence might in other circumstances warrant an inference of bad faith and thus an adverse inference." 119 F.3d at 932. And in *Graff v. Baja Marine Corporation*, 310 Fed.Appx. 298 (11th Cir. Feb. 2, 2009), the Eleventh Circuit affirmed the award of spoliation sanctions where: (1) there was "no dispute" that the plaintiffs destroyed evidence when litigation was reasonably foreseeable; (2) the defendants suffered incurable and significant prejudice because the plaintiffs destroyed "*the* critical piece of evidence in the case; and (3) the plaintiffs were the more culpable party and caused the defendants substantial prejudice. *Id.* at 301-02 (emphasis in original).

Here, there is no dispute that Wal-Mart destroyed the video footage after it received notice of Mr. Abdulahi's EEOC charge wherein he claimed that he was terminated (for allegedly leaving the Garden Center entrance unlocked) in

retaliation for engaging in protected activity. The video footage is *the* critical piece of evidence for Mr. Abdulahi to show that pretext and a desire to retaliate motivated Wal-Mart to terminate his employment. And there is no dispute that Wal-Mart is the more culpable party with regard to preserving the video footage. It was Wal-Mart's obligation to preserve all evidence relevant to Mr. Abdulahi's EEOC charge. Wal-Mart cannot legitimately shirk its preservation duties by arguing that Mr. Abdulahi should have requested Wal-Mart to preserve the footage in his EEOC charge (before he even knew the footage existed). Balancing these factors, sanctions against Wal-Mart are necessary to cure the extreme prejudice suffered by Mr. Abdulahi.

### 5.   An adverse inference and award of attorney's fees to Mr. Abdulahi are appropriate sanctions for Wal-Mart's destruction of the video footage.

Because of the extreme prejudice suffered by Mr. Abdulahi in this case due to Wal-Mart destruction of the video footage, which definitively showed whether the entrance to the Garden Center was locked overnight on October 23, 2009, an adverse inference is warranted. *See Flury*, 427 F.3d at 945 (noting that a jury instruction on spoliation of evidence raising a presumption against the spoliator is a proper sanction for spoliation of evidence). Mr. Abdulahi requests that the court deny Wal-Mart's motion for summary judgment on the issues of pretext and but-for causation, and instruct the jury that destruction of the video footage is

evidence of pretext and that retaliation was the but-for cause of Mr. Abdulahi's termination.[5]

The Court should also require Wal-Mart to pay Mr. Abdulahi's costs and fees (including attorney's fees) incurred because of Wal-Mart's destruction of the video footage to encourage Wal-Mart to comply with its preservation duties in future cases. *See Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1287-88 (M.D. Fla. 2009) (noting that court has discretion to award a party moving for spoliation sanctions its fees and costs incurred from filing the motion). Wal-Mart's request for its costs and fees incurred in responding to Mr. Abdulahi's request for sanctions should be denied, as Wal-Mart offers the Court no legal authority by which the Court may do so.

Submitted this 14th day of February, 2014.

/s/ James E. Radford, Jr.
JAMES E. RADFORD, JR.
Georgia Bar No. 108007
CALEB GROSS
Georgia Bar No. 960323

James Radford, LLC
545 N. McDonough Street

---

[5] In the event the Court finds that Wal-Mart did not act in bad faith in destroying the video footage, Wal-Mart concedes in its response brief (by explaining the court's ruling in *Brown v. Chertoff*) that the Court should at least deny Wal-Mart's motion for summary judgment on pretext and but-for causation and instruct a jury that Wal-Mart's destruction of the footage raised a rebuttable inference that the footage contained evidence of pretext. [*See* Dkt. 50, pp. 18-19 and n.5.]

Suite 212
Decatur, GA 30030
james@jamesradford.com
caleb@jamesradford.com
Telephone: (678) 369-3609

## <u>CERTIFICATE OF COMPLAINCE WITH LOCAL RULES</u>

Pursuant to Local Rules 5.1(C) and 7.1(D), I certify that the foregoing

motion was prepared in Book Antiqua 13-point font.

Submitted this 14th day of February, 2014.

**JAMES RADFORD, LLC**

/s/ James E. Radford, Jr.
James E. Radford, Jr.
Georgia Bar No. 108007

## CERTIFICATE OF SERVICE

This is to certify that on February 14, 2014, a copy of **Plaintiff's Reply in Support of his Motion for Sanctions for Spoliation of Evidence** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

**JAMES RADFORD, LLC**

/s/ James E. Radford, Jr.
James E. Radford, Jr.
Georgia Bar No. 108007