IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IBRAHIM ABDULAHI,

      Plaintiff,

      v.

WAL-MART STORES EAST, L.P.,

      Defendant.

CIVIL ACTION NO.
1-12-CV-4330-SCJ

## ORDER

This matter appears before the Court for consideration of Plaintiff's Renewed Motion for Sanctions for Spoliation of Evidence (Doc. No. [65]).

## I. BACKGROUND

Plaintiff has filed a motion for sanctions for spoliation of evidence against Defendant Wal-Mart Stores East, L.P. ("Wal-Mart").

Plaintiff's retaliation claim in this case is based in large measure on Defendant Wal-Mart's decision to terminate his employment. Doc. Nos. [1,5]. Defendant contends that Plaintiff was fired due to employee misconduct. Demetrius Jackson, the manager of the store where Plaintiff was employed, testified that Plaintiff and another employee left one of the store's entrances unlocked overnight. According to Jackson, he arrived at the store early on the

morning of October 23, 2009, and found that the Garden Center entrance was unlocked. (Jackson Deposition ("Dep."), Doc. No. [49-1] at 58-61). Jackson testified, "If my memory serves me correctly, I drove up on the store that morning myself and saw the chains not up and the doors not locked." Id. at 60-61. The Garden Center entrance is closed overnight for safety reasons and to deter theft. Id. at 58-61; Plaintiff's ("Pla.") Dep., Doc. No. [36-3] at 245; Defendants' Statement of Material Facts ("DSMF"), Doc. No. [36] ¶ 36.

Jackson testified that he questioned the two Assistant Store Managers who worked that night, Plaintiff and Mark Conner. (Jackson Dep., Doc. No. [49-1] at 62). According to Jackson, both Plaintiff and Conner admitted that they failed to ensure that the Garden Center doors were locked. Id. Plaintiff, however, testified that he knows that the doors were locked that night and that Jackson was not being truthful when he stated that the doors were unlocked. (Pla. Dep., Doc. No. [36-3] at 276-77).

Jackson testified that he reviewed surveillance video footage of the doors and that the video footage confirmed that the doors had remained unlocked overnight. (Jackson Dep., Doc. No. [49-1] at 62-66]. However, Jackson took no steps to preserve the video footage. Id. at 66. When asked if the footage was still

2

preserved, Jackson testified, "I don't think they keep anything over six months." Id. at 62. Defendant Wal-Mart has confirmed that the video footage was recorded over in the normal course of business, in the absence of a specific request to save the footage. Doc. No. [50-1], p. 4, ¶9.

In the two months immediately prior to Defendant's decision to terminate Plaintiff's employment, Plaintiff had filed two formal charges of discrimination against Defendant Wal-Mart with the Equal Employment Opportunity Commissioner ("EEOC"). (Pla. Dep. (Doc. No. [36-3] at 251, Doc. No. [36-7], pp. 36, 38, Exs. 37, 39). Plaintiff argues that Wal-Mart was reminded of its duty to preserve the footage in November, 2009 when Plaintiff amended his EEOC charge to include his termination. Doc. Nos. [36-7], p. 37, [49], p. 10.[1]

The Court held a hearing on October 21, 2014. Said motion is now ripe for review.

---

[1] At oral argument, Defendant Wal-Mart argued that it probably would not have received notice of the November 2009 charge for another three to four weeks and could have possibly recorded over the video during that time, as well. Defendant Wal-Mart did not present evidence of when it actually received notice. In the absence of evidence as to when Defendant Wal-Mart actually received notice, the Court gives no weight to this argument.

3

## II. LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009); see also Green Leaf Nursery v. E.I. DuPont Nemours and Co., 341 F.3d 1292, 1308 (11th Cir. 2003) (providing a similar definition of spoliation). The imposition of spoliation sanctions is governed by federal law, as spoliation sanctions are considered an evidentiary matter. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). However, where applicable, courts may look to Georgia law as "[f]ederal law in this circuit does not set forth specific guidelines" regarding spoliation sanctions and as "Georgia state law on spoliation is wholly consistent with federal spoliation principles." Id.

The burden rests with the movant to prove: (1) the evidence existed at one time; (2) the alleged spoliator was under a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its *prima facie* case or defense. In re Delta/Air Tran Baggage Fee Antitrust Litg., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011); Southeastern Mech. Servs., Inc. v. Brody, 657 F. Supp. 2d 1293, 1299 (M. D. Ga. 2009).

4

Under Georgia law, "spoliation of critical evidence may warrant the imposition of sanctions . . . ." Flury, 427 F.3d at 945. "To determine whether spoliation sanctions are warranted, a court must consider the [Flury] factors . . . ." Graff, 310 F. App'x at 301, as follows:

> (1) whether the [movant] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [spoliator] acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.[2]

The Eleventh Circuit has acknowledged the broad discretion afforded to district courts in determining whether to impose sanctions. Flury, 427 F.3d at 944.

## III. ANALYSIS

The Court will consider Plaintiff's initial burden and each of the above-stated factors in turn.

As to Plaintiff's initial burden, the Court finds that Plaintiff has established that the evidence (videotape footage) existed at one time and that Defendant was under a duty to preserve the video footage (due to an ongoing EEOC

---

[2] The fifth factor is not at issue in this case and accordingly, will not be discussed herein.

investigation during the applicable time period,[3] Wal-Mart's own investigation into the alleged employee misconduct including a review of the video footage, and litigation being reasonably foreseeable).  See E.E.O.C. v. Suntrust Bank, No. 8:12-cv-1325, 2014 WL 1364982, at * 6 (M.D. Fla. Apr. 7, 2014) (finding that employer had a legal duty to preserve evidence, including surveillance videos, beginning on the date that the employee at issue reported to the human resources advisor that she was the victim of sexual harassment and had retained a lawyer); see also 29 C.F.R. § 1602.14 ("Where a charge of discrimination has been filed . . . against an employer under title VII, . . . the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.").  The Court further finds that Plaintiff has shown that the evidence is crucial to his being able to prove his *prima facie* retaliation case at trial.

Next, the Court will consider the Flury factors.  As to the first factor, the Court must ask whether Plaintiff was prejudiced as a result of the destruction of evidence. Plaintiff argues prejudice on the ground that the video footage was the

---

[3]  In the absence of authority that holds that the employee is responsible for identifying (for the employer) video footage subject to preservation, the Court does not find persuasive Defendant Wal-Mart's arguments that the video was not identified in the Abdulahi's EEOC charge.

single piece of relevant evidence for purposes of proving pretext and causation. Doc. No. [49], p. 7. More specifically, Plaintiff asserts that the video footage is impartial and indisputable evidence that shows whether the entrance was unlocked overnight and accordingly, whether Plaintiff was fired for an illegal reason. Doc. No. [51], pp. 2-3, 7. In response, Defendant denies prejudice and argues that the conduct at issue can be proved through direct testimony of Demetrius Jackson and contemporaneous evidence (such as emails Jackson sent regarding the incident). Doc. No. [50], p. 10. The Court finds that Plaintiff has shown prejudice or damage to his legal claim (in terms of his ability to prove retaliation) by the destruction of the video. The Court will address Defendant's "cure" arguments, under the next/second factor.

As stated above, under the second factor, the Court must consider whether the prejudice can be cured. Plaintiff argues that it is impossible to cure the prejudice that it has suffered as the direct testimony/contemporaneous evidence that Defendant seeks to present through Jackson's testimony (concerning what he saw on the video) is not from an impartial source, and is not a substitute for the actual footage. Doc. No. [49], pp. 8, 12. The Court finds that neither Jackson's

AO 72A
(Rev.8/82)

testimony or the emails (which Defendant allege are contemporaneous evidence) are equivalents for the video and that the prejudice cannot be cured.

As to the third factor, the Court must consider the practical importance of the evidence. Plaintiff argues that the video footage was the single piece of relevant evidence for purposes of proving pretext and causation. Doc. No. [49], p. 7. Defendant Wal-Mart argues that the video footage was immaterial and only a small-piece of the retaliation scheme alleged by Plaintiff. Doc. No. [66], p. 3. The Court does not agree that the video footage is immaterial. The video footage is relevant evidence and the footage has practical importance in terms of Plaintiff's ability to prove retaliation.

As to the fourth factor, the Court must consider whether Defendant Wal-Mart acted in good or bad faith. In considering whether there was bad faith, "[t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Flury, 427 F.3d at 946. "Mere negligence" in losing or destroying the records is not enough for an adverse inference, "as it does not sustain an inference of consciousness of a week case." Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997).[4]

_____

[4] The parties disagree as to whether there must have been intentional destruction of the video to show bad faith. At least one district court has interpreted Eleventh

Plaintiff's evidence of bad faith consists of the deposition testimony of Store Manager Jackson, who responded in the affirmative when asked if he was aware that whatever was on the surveillance video could be important evidence regarding the basis for Plaintiff's termination. Doc. No. 49-1, p. 66. Defendant Wal-Mart argues that this statement by Jackson, a non-lawyer, concerns Plaintiff's termination, not future litigation. After review, the Court finds that the statement, combined with the totality of the circumstances, are sufficient to attribute bad faith to Defendant Wal-Mart. In essence, as noted by the magistrate, "given the numerous indications from Plaintiff that he would challenge Walmart's decision to terminate his employment," "a reasonable jury could find it implausible that Walmart decisionmakers would make no effort to preserve surveillance video footage supporting the termination decision." Doc. No. [53], p. 44. The Court finds that Plaintiff have shown something more than mere negligence in Wal-Mart's destruction of the videotape footage.

---

Circuit authority to conclude that "[t]he party claiming spoliation must present 'probative evidence' that the relevant materials were 'purposely lost or destroyed.'" Williams v. Wal-Mart Stores, Inc., 584 F. Supp. 2d 1316, 1321–22 (M.D. Ala. 2008), aff'd 342 F. App'x 478 (11th Cir. 2009). After review of said case and binding Eleventh Circuit authority, the Court finds that it is not clear as to whether "purposely lost or destroyed," is the actual standard. It is, however, clear that something more than "mere negligence" is required.

After weighing the Defendant's culpability and the resulting prejudice to the Plaintiff and consideration of the other <u>Flury</u> factors, the Court finds that the factors weigh in favor of sanctions.

The Court finds that the appropriate sanctions are: (1) a jury instruction that informs the jury that destruction of the video footage creates a presumption that Wal-Mart's stated reason for terminating Plaintiff was pretextual and that retaliation was the but-for cause of Plaintiff's termination; (2) an award of attorney's fees attributable to Plaintiff having to bring the pending motion.

## CONCLUSION

Plaintiff's Renewed Motion for Sanctions for Spoliation of Evidence (Doc. No. [65] is hereby **GRANTED**.  The Court orders the following sanctions.  At trial, the jury will be instructed that destruction of the video footage creates a presumption that Wal-Mart's stated reason for terminating Plaintiff was pretextual and that retaliation was the but-for cause of Plaintiff's termination.[5] The Court further awards Plaintiff attorney's fees attributable to the pending

---

[5] The exact language of the jury instruction will be finalized during the charge conference.  Plaintiff shall submit a draft jury instruction in its proposed jury charge in accordance with the time lines set forth in the Court's instructions at Doc. No. [73].

AO 72A
(Rev.8/82)

motion in the amount of **$19,980.00**.  Defendant shall pay said attorney's fee

amount to Plaintiff's Counsel within **thirty (30) days** of the entry of this Order.

**IT IS SO ORDERED,** this ⎽⎽18th⎽⎽ day of December, 2014.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

11